TARA K. McGRATH
United States Attorney
JEFFREY D. HILL
Special Assistant United States Attorney
California State Bar No. 235258
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
(619) 546-7924
Email: Jeffrey.Hill@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RANAE NORMA WOODARD,<br><br>Defendant. | Case No. 17cr1337-JLS<br><br>**UNITED STATES' REVOCATION OF SUPERVISED RELEASE CONTESTED HEARING MEMORANDUM**<br><br>Date: August 6, 2024<br>Time: 1:30 p.m.<br><br>The Honorable Janis L. Sammartino |

The Plaintiff, United States of America, by and through its counsel TARA K. McGRATH, United States Attorney, and Jeffrey D. Hill, Special Assistant United States Attorney, hereby files its Revocation of Supervised Release Contested Hearing Memorandum.

I

**STATEMENT OF THE CASE**

**A.   Background**

On February 2, 2018, the Court sentenced RANAE NORMA WOODARD ("Defendant") to 54 months in prison followed by a 3-year term of supervised release for violating Title 21, United States Code, §§ 952 and 960 (dkt. 50).

Defendant's supervised release terms included that she "shall not commit another federal, state or local crime" and that she "shall refrain from any unlawful use of a controlled substance" and "not possess a firearm, ammunition, destructive device, or any

other dangerous weapon." Defendant's supervised release commenced on January 1, 2022, and Defendant was advised of and acknowledged the terms of her supervised release on January 26, 2022, via email (Exhibit 1) and later in person on May 2, 2022 (Exhibit 2).

B.  **Allegation Conduct**

On April 5, 2023, during the service of a search warrant at a property in Yucca Valley, in the Central District of California, Defendant and S.B. were observed by deputies from the San Bernardino Sheriff's Department outside of a travel trailer on the southeast corner of the property. Defendant was detained while trying to enter the passenger side of a black Lexus SUV, which she later identified as her car (Exhibit 3).

Defendant was placed in a patrol car with S.B. before any police questioning commenced. At approximately 11:37 A.M. Defendant stated to S.B. "they're gonna see the dope, they're gonna see your bag of dope. Your guns. I'm gonna get busted. My God." A moment later, Defendant asked S.B. "you have your phone? I don't have either of mine." This conversation within the patrol vehicle was surreptitiously recorded by law enforcement (Exhibit 4).

San Bernardino Sheriff's Deputy Brent Miller later conducted an approximately twenty-minute long interview with Defendant, which was recorded (Exhibit 5).

Deputy Miller initially questioned Defendant about her name, date of birth, and telephone number. Defendant stated "My personal? I have two of them in there." Defendant then provided two telephone numbers to Deputy Miller. After concluding the interview, Deputy Miller called each telephone number that Defendant had provided, and two iPhones (one gray and one teal) found in the trailer's entry room each rang. (Exhibit 6).

Deputies took pictures within the travel trailer, including the front entry room to the right of the front door (Exhibit 7). Approximately four feet from Defendant's telephones, Deputies observed a Smith & Wesson M&P .40 pistol, serial number DUF7476 in plain view on a coffee table (Exhibit 8). The handgun was loaded with a magazine containing live rounds (Exhibit 9). Also in plain view was an Anderson Manufacturing AM-15 .223 rifle, serial number #21099032, and next to it a magazine containing live .223 caliber

rounds (Exhibit 10). The rifle was later measured and determined to have a total length of 23" and a barrel approximately 9" in length (Exhibit 11).

Deputy Miller advised the Defendant of her *Miranda* rights, and she waived them and elected to provide a statement. She stated that she had been with S.B. for approximately two and a half years, and that she had recently gotten out of prison. She identified the Lexus on the property as her car. Defendant admitted that "yes I've been smoking meth, I'm not going to deny that. It's in my purse, you know, a little pipe." Deputy Miller asked her to clarify that she was referring to what was in her car, and Defendant said "yeah, that's the only thing that should be in the car." Defendant further stated that she had smoked meth earlier that morning, using the pipe found in her car, on the property. Defendant stated that she uses methamphetamine every day.

Defendant also stated that S.B. was a construction worker, and that he had gotten hit by a drunk driver about a year prior and had injured his leg.

Deputy Miller asked where Defendant lives when she stays at the property – "The trailer. In the room. I mean, it's not that big. You're either cooking, you're either sleeping or watching TV, or you're over here working on a Harley or a car, and I'm just getting high fucking doing God knows whatever, wasting time, doing nothing."

When asked what was on the couch in the main living area of the trailer, Defendant stated that there was "a c-cord, a charger" but denied seeing a rifle or a handgun on the couch. Defendant continued to deny seeing a rifle or a handgun in the trailer. When asked who they belonged to, she denied knowledge. When told the rifle and handgun were sitting out in plain view, Defendant admitted "there's a little handgun, but that's not a rifle…"

When asked who the handgun belonged to, she said "I suppose it's his, it's his place." After being confronted with her statement that she primarily stayed there, Defendant admitted "for the last week I have."

San Bernardino Sheriff's Deputies located approximately 27.4 ounces of a white crystalline substance consistent with methamphetamine within the bedroom of the travel trailer, as well as several pounds of processed marijuana. A glass tube with burn marks and

residue of a white crystalline substance consistent with methamphetamine was found within the Lexus that Defendant identified as belonging to her.

C. **Procedural Background**

Defendant and S.B. were thereafter arrested by the San Bernardino Sheriff's Department, and Defendant posted a $90,000 bail bond with a $9,000 non-refundable cash deposit. Defendant and S.B. were then charged in San Bernardino Superior Court case number FMB2300105, which remains pending only as to the Defendant.

On May 3, 2023, this Court authorized a no-bail bench warrant for Defendant's arrest for the conduct alleged above (dkt. 65). An amended petition, alleging that the conduct related to drug manufacturing legally constituted a Grade A violation, was authorized on April 30, 2024 (dkt. 81), A second amended petition alleging an additional Grade A violation related to the nature of one of the firearms as a prohibited rifle within the meaning of 26 U.S.C. § 5845(a), was authorized on July 19, 2024 (dkt. 97).

B. **OSC Hearing Status**

Defendant was not arrested on the outstanding warrant for violating her supervised release for over eleven months. On April 12, 2024, Defendant was finally arraigned on the allegations in the Central District of California, and granted $5,000 bail despite the no-bail order of this Court (dkt. 67). Defendant was ordered to appear in the Southern District of California on April 19, 2024, and did not do so, resulting in a bench warrant (dkt. 72).

On April 22, 2024, Defendant appeared in the Southern District of California, had her warrant recalled, and was permitted to remain on the $5,000 bond ordered in the Central District of California (dkt. 76). Defendant again failed to appear as ordered on June 7, 2024, and during a telephonic appearance was ordered to bring proof of a claimed contagious medical condition to her next appearance on June 28, 2024, and a bench warrant was issued but held until that date (dkt. 86).

On June 28, 2024, Defendant failed to produce evidence of her claimed medical conditions, and was remanded into custody. A contested hearing was initially set for

July 23, 2024 (dkt 89). Due to Defendant's unavailability due to quarantine, the contested hearing was continued to August 6, 2024 at 1:30 p.m. (dkt. 99).

On July 19, 2024, Defendant filed a Motion to Dismiss for Lack of Probable Cause (dkt 98). This filing did not result in any ECF notice to opposing counsel, and counsel for the United States did not become aware of it until August 5, 2024.

The United States intends to proceed only with proving the Defendant's use of a controlled substance, a Grade C violation outlined in Allegation #3 of the original Petition, and Defendant's possession of two firearms: the Smith & Wesson M&P 40 handgun, serial number DUF7476 (a Grade B violation) and the Anderson Manufacturing AM-15 .223 rifle, serial number #21099032 (a Grade A violation), as outlined in Allegation #5 of the Second Amended Petition.

C. **Counsel**

Defendant is represented by appointed counsel Juan Cabrales and Holly Sullivan.

D. **Interpreter**

An interpreter will not be necessary for any witness called by the United States.

E. **Discovery**

The United States has taken affirmative measures to provide defense counsel with evidence outside of its control, including obtaining reports, photographs, and recordings from the San Bernardino Sheriff's Department and the San Bernardino District Attorney's Office. The United States received some reciprocal discovery from the defense on August 2, 2024. The United States has requested, but has not received a potential witness list from the defense.

//
//
//
//
//
//

## II
## <u>WITNESSES</u>

The United States expects to call the following witnesses during the hearing although it reserves the right to change the order, substitute, add, or omit one or more witnesses:

1. Ito Vidana, United States Probation Department
2. Brent Miller, San Bernardino Sheriff's Department

## III
## <u>EXHIBITS</u>

The United States currently intends to introduce the following eleven exhibits, all of which have previously been provided to defense counsel.

1. Email from Defendant to Ito Vidana with Subject "Re: Federal Probation Acknowledgement of Supervised Release Conditions" sent January 26, 2022.
2. Copy of Defendant's Judgement in this case (dkt. 50) signed by Defendant and Ito Vidana on May 9, 2022.
3. Picture of Defendant's Black Lexus parked outside of the trailer on April 5, 2023.
4. CD-R containing audio file B0882842.WMA, a 1:44:14 surreptitious recording of Defendant and S.B. speaking to one another immediately after their detention on April 5, 2023.
5. CD-R containing audio file 0718 AUDIO 2.WMA, a 40:52 recording of Defendant's statement to Deputy Miller after the search was conducted within the trailer.
6. Picture of the interior wall of the front room showing Defendant's two iPhones on the corner of a brown leather ottoman, next to a coffee table with the Smith & Wesson M&P 40 handgun.
7. Picture of the front room showing the brown leather ottoman, coffee table, and brown leather sofa with an Anderson Manufacturing AM-15 .223 rifle on the far cushion.
8. Picture of the coffee table with the Smith & Wesson M&P 40 handgun.
9. Picture of the Smith & Wesson M&P 40 handgun with the clip removed and showing it loaded with live rounds.

10. Picture of the Anderson Manufacturing AM-15 .223 rifle, loaded clip, and a USB charger and cord on the sofa cushion.
11. Picture of the Anderson Manufacturing AM-15 .223 rifle in the evidence room of the San Bernardino Sheriff's Department with a measuring tape showing its total length to be approximately 23".

## IV
## APPLICABLE LAW

Although this is a violation that is based upon the service of a search warrant, it is settled that exclusionary rule does not apply in a supervised release hearing. As the Ninth Circuit held in *United States v. Herbert*, 201 F.3d 1103, 1104 (9th Cir. 2000):

> The United States Supreme Court has recently rejected the application of the exclusionary rule in state parole revocation proceedings, concluding that exclusion of evidence seized in violation of the Fourth Amendment from these hearings would severely disrupt their traditionally flexible and non-adversarial nature without creating any significant deterrent effect discouraging police and parole officers from conducting improper searches. See *Pennsylvania Bd. of Probation and Parole v. Scott*, 118 S.Ct. 2014, 2020-22 (1998). We conclude that the Court's reasoning in Scott applies equally to suppression of evidence in federal supervised release proceedings, and consequently affirm the district court's denial of Hebert's suppression motion.

With regard to proving possession of the firearms located in the trailer, the commentary to Ninth Circuit Criminal Jury Instruction 8.65 discusses it as follows:

> Constructive or joint possession may satisfy the possession element. To show constructive possession, the government must prove a connection between the defendant and the firearm or ammunition sufficient "to support the inference that the defendant exercised dominion and control over" it. *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001) (internal quotation marks and citation omitted). See generally, *United States v. Tucker*, 641 F.3d 1110 (9th

Cir. 2011). Similarly, joint control of the premises where the firearm or ammunition was found may be sufficient to establish possession where a defendant "has knowledge of the weapon and both the power and the intention to exercise dominion and control over it." *Carrasco*, 257 F.3d at 1049 (internal quotation marks and citation omitted).

Constructive possession is shown where the defendant "knowingly holds ownership, dominion, or control over the object and the premises where it is found." *Id.* at 1041. See also *United States v. Terry*, 911 F.2d 272, 279–80 (9th Cir. 1990) (quoting definitions of constructive possession). Constructive possession only arises where the defendant knows of the firearm's presence; mere ability to reach it is insufficient. *Terry*, 911 F.2d at 280. But knowledge alone is insufficient; there must also be a nexus or relationship between the defendant and the firearm such that the defendant's dominion and control can reasonably be treated as actual possession. *Id.* at 278.

Joint possession is actual or constructive possession by the defendant and at least one other person. *Carrasco*, 257 F.3d at 1050 ("More than one person can be in possession of something if each knows of its presence and has the power and intention to control it."). The defendant's mere presence in a place where the firearm or ammunition is found will not support a finding of knowing possession, but evidence showing more than mere presence may be enough. See *Nevils*, 598 F.3d at 1168 (comparing cases); *Terry*, 911 F.2d at 279 (mere proximity, presence on property where firearm is found, or association with person having control of firearm is insufficient). Both actual and constructive possession may be shown by circumstantial evidence. *Thongsy*, 577 F.3d at 1041.

DATED:    8/6/2024            Respectfully Submitted,

TARA K. McGRATH
United States Attorney

*Jeffrey D. Hill*
JEFFREY D. HILL
Special Assistant United States Attorney